# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER M. WILLIS, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-20-1119-SM |
| KILOLO KIJAKAZI, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
|   Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Amber M. Willis brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(c). Docs. 16, 17.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings, arguing that the Administrative Law Judge (ALJ) disregarded her chronic pain syndrome beyond step two, failed to properly consider Nurse Practitioner Tracy Ogden's medical source opinion, and failed to include all her impairments in his hypothetical question to the

vocational expert when assessing her residual functional capacity[1] (RFC). *See* Doc. 22 at 5-12. [2]

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.   Administrative determination.

### A.   Disability standard.

The Social Security Act defines a disabled individual as a person who is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

---

[1]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[2]   Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

**B.     Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C.     Relevant findings.**

**1.     The ALJ's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 13-27; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity since November 1, 2018, the alleged onset date;

(2)   had the following severe impairments: lupus, rheumatoid arthritis, Raynaud's phenomenon, Fibromyalgia, depression, and post-traumatic stress disorder;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)  had the RFC to perform light work with the additional exertional limitations of: she can lift or carry and push or pull twenty pounds occasionally and ten pounds frequently; she can sit for six hours out of an eight-hour day and stand or walk a combined total of six hours out of an eight-hour day; and she has the additional non-exertional limitations of: she is able to cope with normal changes in a low stress work environment (defined as no assembly-line-type pace or high production quota), she can tolerate superficial (brief and cursory) contact with co-workers and supervisors, she should have no more than superficial (brief and cursory) contact with the public, her job duties should require minimal social demands (defined where claimant could work independently on tasks), and she can understand, remember, and carry out simple tasks and detailed tasks, but no complex tasks;

(5)  was not able to perform her past relevant work;

(6)  was able to perform jobs that exist in the national economy, such as small product assembler, packer/inspector, and electronics assembler;[3] and so,

(7)  had not been under a disability from November 1, 2018, through June 23, 2020.

AR 14-27.

### 2. Appeals Council's findings.

---

[3]  The vocational expert testified these jobs were all unskilled with a Specific Vocational Preparation of 2. AR 57-58.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

5

### B. Issues for judicial review.

Plaintiff asserts first that the ALJ overlooked her chronic pain syndrome at step two. Doc. 22, at 5-7. Second, she argues the ALJ erred in evaluating Nurse Ogden's medical source opinion. *Id.* at 7-9. And third, Plaintiff argues the ALJ erred in his RFC assessment at step five because he failed to include all her impairments in his hypothetical to the vocational expert. *Id.* at 9-12.

## III. Analysis.

### A. Consideration of chronic pain syndrome.

Plaintiff argues that the ALJ should have considered her chronic pain syndrome as a severe impairment at step two. *Id.* at 6-7.[4] At step two, the ALJ found Plaintiff had the severe impairments of lupus, rheumatoid arthritis, Raynaud's phenomenon, Fibromyalgia, depression, and post-traumatic stress disorder. AR 14. He then proceeded to the remaining steps of the evaluation. *Id.* at 14-27. Because the ALJ found other severe impairments and continued with his evaluation, Defendant argues any step-two error is harmless and does not require reversal. *See* Doc. 26, at 11. The Court agrees. S*ee Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error [at step two] became

---

[4] Plaintiff also lists her hyper mobility arthralgia, anxiety, and bipolar depression as impairments the ALJ overlooked, Doc. 22, at 6, but gives no further argument on these impairments.

harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

While the ALJ did not list chronic pain syndrome as a severe impairment at step two, he found Plaintiff had six severe impairments and proceeded through the remaining steps of the sequential evaluation. AR 15-27. The ALJ also noted that Plaintiff "primarily alleged disability due to problems with" several impairments—not including chronic pain syndrome. *Id.* at 19.

Because the ALJ proceeded beyond step two, his failure to explicitly include chronic pain syndrome in his step-two analysis is not reversible error. *See Carpenter*, 537 F.3d at 1266. And he considered Plaintiff's pain in his consideration of the "entire record." AR 18-24.

**B.     Consideration of Nurse Ogden's medical source opinion.**

Plaintiff argues next that the ALJ erred in failing to give Nurse Ogden's medical source opinion "the most weight" because "she treated [Plaintiff] for a significant amount of time and was well versed in [Plaintiff's] conditions." Doc. 22, at 7. Plaintiff asserts that Nurse Ogden's opinion was the "appropriate one to follow for the form[ulation] of an RFC" because she was "well awar[e] of all [Plaintiff's] impairments, both physical and psychological." *Id.* at 8.

7

The ALJ's duty is to evaluate every medical opinion in the record and articulate how persuasive he finds the opinion. *Tedder v. Kijakazi*, No. CIV-20-1211-P, 2021 WL 5826275, at * 2-3 (W.D. Okla. Dec. 8, 2021); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ determines an opinion's persuasiveness by evaluating its supportability and consistency and then "articulating" how he considered those factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ may also, but need not, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors like the source's familiarity with the disability program's policies and evidentiary requirements. *Id.*; *id.* at §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5). The ALJ need not assign "any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Id.* at §§ 404.1520c(a), 416.920c(a). But the ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review of the decision. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (stating the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions").

After discussing Plaintiff's medical history, including five past visits Plaintiff had with Nurse Ogden, *see* AR 19-25, the ALJ assessed Nurse Ogden's May 1, 2020 "Medical Source Statement of Ability to Do Work-Related Activities" and found it unpersuasive:

> The undersigned considered the opinion of nurse practitioner Tracy Ogden, who opined that the claimant occasionally could lift up to 20 pounds and occasionally could carry up to 10 pounds (Exhibit 30F, p. 1). She stated that the claimant could sit up to two hours at a time for a total of two hours in a workday. She stated that the claimant could stand and walk up to one hour at a time for a total of 30 minutes in a workday. (Exhibit 30F, p. 2). Nurse Ogden indicated that the claimant should never reach overhead but occasionally could reach in all other directions with her bilateral hands. She stated that the claimant occasionally could handle, finger, feel, push, and pull with her bilateral hands. She reported that the claimant occasionally could use her bilateral feet for operation of foot controls (Exhibit 30F, p. 3). Nurse Ogden stated that the claimant occasionally could climb ramps and stairs, balance, stoop, and kneel. She indicated that the claimant never should crouch, crawl, or climb ladders, ropes, or scaffolds. (Exhibit 30F, p. 4).
>
> Nurse Ogden stated that the claimant occasionally could tolerate exposure to moving mechanical parts; humidity and wetness; dusts, odors, and pulmonary irritants; extreme heat; and vibrations. She stated that the claimant never should be exposed to unprotected heights, operating a motor vehicle or extreme cold. She indicated that the claimant could tolerate a moderate noise level, such as an office. (Exhibit 30F, p. 5). The undersigned finds this opinion not persuasive as it is not consistent with the medical records. In addition, the opinion statement is not consistent with the statement itself. Nurse Ogden's treatment notes on November 13, 2019, and on September 19, 2019, indicate that the claimant had normal tone and motor strength and normal movement of all

9

> extremities. She also reported that the claimant had normal gait and station (Exhibit 23F, pp. 7, 12). The treatment records of Nurse Ogden are consistent with the residual functional capacity assessment of the claimant.

*Id.* at 24-25.

Plaintiff argues the ALJ engaged in improper picking and choosing of the medical evidence to support his conclusion that Nurse Ogden's opinion was unpersuasive because he only cited two of Plaintiff's visits with Nurse Ogden where she documented normal findings. Doc. 22, at 7-8; *see Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.") (internal quotation marks and citation omitted). Plaintiff insists that Nurse Ogden's medical source statement is "very well supported" by the record as a whole. Doc. 22, at 8. The Court concludes the ALJ's finding that Nurse Ogden's opinion was unpersuasive is supported by substantial evidence.

The record shows Nurse Ogden documented in her almost monthly treatment notes, spanning August 2018 through February 2020, that Plaintiff, despite her various ailments, was ambulating normally, had normal motor strength, normal muscle tone, a normal gait and station, normal movement of all extremities, normal bones and joints (save one examination where Plaintiff

10

had "tenderness" of her joints and soft tissue), and a normal mental status with no depression (save one examination where her mental status was active and alert but also "anxious"). *See* AR 456, 462, 554, 559, 564-65, 569-70, 575, 580, 731-32, 737, 742, 747, 751-52. Given these consistently normal findings, it was reasonable for the ALJ to conclude Nurse Ogden's medical source statement, in which she opined Plaintiff was essentially unable to work, was internally inconsistent.

The ALJ also compared Nurse Ogden's opinion with the state agency consultants' opinions and found it to be inconsistent with their determination that Plaintiff could perform work activity at the light exertion level with certain exertional and non-exertional limitations. *Id.* at 19-24. The ALJ found these opinions persuasive because they were consistent with the medical and mental health evidence in the record—including Nurse Ogden's own treatment records. *Id.* at 24-25. The record supports this finding.

The record shows that Plaintiff's various providers generally found she had a normal gait and station, normal flexion and extension, full range of strength and motion, and varying tenderness in her joints from multiple points to none. *Id.* at 482, 484, 487, 490, 493, 510, 516, 527, 601, 615, 629, 687, 722, 758-59, 762-63. And while Plaintiff's mood and affect were generally found to

11

be appropriate with normal orientation, her concentration varied from "poor" to "better" to "good." *Id.* at 487, 490, 493-94, 499, 590, 595, 601, 615, 618, 629, 721-22, 758, 762.

The ALJ did what he was required to do by comparing Nurse Ogden's opinion with the other evidence in the record and articulating his conclusion about its supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), (c)(2), 416.920c(b)(2), (c)(2). Given there is substantial evidence in the record to support the ALJ's conclusion that Nurse Ogden's opinion is unpersuasive, the Court will not reweigh the evidence. *Newbold*, 718 F.3d at 1262; *cf. Tedder*, 2021 WL 5826275, at *9 (finding no grounds for reversal where the ALJ "considered the appropriate factors in evaluating" the record).

### C. The ALJ did not legally err when he posed questions to the vocational expert based on evidence of Plaintiff's exertional and nonexertional limitations.

Plaintiff lastly argues that the ALJ legally erred in his questioning of the vocational expert because his questions did not include all her limitations. Doc. 22, at 9. Plaintiff faults the ALJ's failure to include in his hypothetical questions to the vocational expert, and in his resultant RFC, her occasional ability to handle, finger, and feel or her moderate mental limitations in the areas of social functioning and concentration, persistence, and pace. *Id.* at 11.

### 1. Handling, fingering, and feeling.

As to Plaintiff's ability to handle, finger, and feel, the ALJ did not account for any such limitations in his questions to the vocational expert. AR 55-60. Plaintiff states that Nurse Ogden limited her to only occasional handling, fingering, and feeling with her left hand. Doc. 22, at 10; *see* AR 949. She argues the jobs proposed by the vocational expert all required frequent reaching, handling, and fingering, which she cannot do because of her joint tenderness. Doc. 22, at 9-10.[5] But the record shows Plaintiff, overall, had no swelling, tenderness, or deformities in her extremities; had normal motor strength and tone, had no bony abnormalities; and had full range of motion. AR 436, 441, 446, 456, 527, 575, 580, 731, 737, 742, 747, 752, 759, 762-63, 766. And, based on these normal findings, the state agency consultants attributed no manipulative or strength limits to Plaintiff's use of her hands. *Id.* at 125-27. The ALJ found these opinions persuasive. *Id.* at 24.

"Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) (citing

---

[5] Plaintiff states the ALJ proposed the jobs of "power screwdriver operator," "injection molding machine tender," and closing machine tender. Doc. 22, at 9. But Plaintiff mis-identifies the jobs the ALJ listed in his decision. *See* AR 26 (citing the jobs of "small product assembler," "packer/inspector," and "electronics assembler" as jobs Plaintiff could still perform); *see also id.* 57-58.

13

*Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988)). An ALJ needs only to consider the resultant functional limitations arising from the condition, if any, to formulate Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Despite her diagnoses of fibromyalgia and hypermobility arthralgia, Plaintiff points to no medical opinion the ALJ found persuasive suggesting limitations to her handling, fingering, or feeling, and her medical records do not support any limitations. The Court finds the ALJ did not err in his hypothetical or in his RFC assessment of Plaintiff's physical limitations. *See, e.g.*, *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The administrative law judge had to ask only about the effect of those limitations ultimately assessed; the judge did not need to ask about the effect of limitations that he didn't believe applied."); *see also Paulsen*, 665 F. App'x at 668 (finding no error where there was "no evidence that [the claimant's] obesity, asthma, or chronic-pain syndrome, separately or in combination with her other impairments, resulted in any work-related limitations beyond those found by the ALJ").

### 2. Mental limitations.

Plaintiff complains that the ALJ failed to take in to account her severe depression and his "hypothetical and decisional RFC does not even mention

14

any mental limitations . . . ." Doc. 22, at 10-11. She argues the ALJ erred because "[t]he moderate limitations of social function and of concentration, persistence, or pace are significant limitations which must be in the hypothetical to the vocational expert." *Id.* at 10.

As Plaintiff admits, *see id.*, and as Defendant points out, *see* Doc. 26, at 13-14, the ALJ did find moderate limitations in Plaintiff's ability to concentrate, persist, or maintain pace, and interact with others. *See* AR 16-17. But, contrary to Plaintiff's assertions, the ALJ also accounted for these limitations in his hypothetical question to the vocational expert and in the RFC. *See id.* at 17-18, 55-56.

In his hypothetical, the ALJ restricted Plaintiff to simple and detailed tasks but not complex tasks, only superficial contact with coworkers, supervisors, and the public (defined as brief and cursory), minimal social demands (meaning Plaintiff could work independently), and low stress with no assembly-line-type pace or a high production quota. *Id.* at 55-56. In so doing, the ALJ considered Plaintiff's and her mother's function reports detailing Plaintiff's difficulty getting along with others and Advanced Practice Registered Nurse Stephanie Durham's treatment notes that Plaintiff was cooperative during her examination and her affect was both "constricted and

15

expansive." *Id.* at 16 (ALJ's findings); *id.* at 251-53, 259-61, 292, 721-22 (record evidence). The ALJ also considered these same sources detailing that Plaintiff had some trouble with concentration and focus but could still perform simple and detailed tasks (she could concentrate on playing video games but had trouble concentrating on reading) with some direction. *Id.* at 16-17 (ALJ's findings); *id.* at 250-51, 253, 258-59, 261, 293-94, 721-22 (record evidence).

As is apparent, the ALJ included the mental restrictions he found in his hypothetical to the vocational expert. The Court rejects Plaintiff's suggestion that the ALJ should have used the term "moderate" or included severity ratings in his hypothetical to the vocational expert as that is not required by the regulations. *See Paulsen*, 665 F. App'x at 668 ("General terms or severity ratings such as moderate should not be used in the RFC or hypotheticals because they 'do not describe function and do not usefully convey the extent of capacity limitations.'" (quoting SSA Program Operations Manual (POMS) DI § 24510.065.B.1.c (2018))).

The ALJ adequately incorporated the functional limitations of Plaintiff's nonexertional impairments into the RFC by limiting Plaintiff to simple and detailed tasks and only superficial contact with her co-workers, supervisors, and the public with minimal social demands. *See Vigil v. Colvin*, 805 F.3d 1199,

16

1204 (10th Cir. 2015) ("The evidence in the record regarding Vigil's mental status supports the ALJ's RFC determination that limiting Vigil to perform unskilled work would adequately account for his moderate limitations in concentration, persistence, and pace."); *see also Smith*, 821 F.3d at 1269 (rejecting the claimant's argument that the ALJ "should have assessed additional nonexertional impairments" and explaining that the ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity," including "simple" tasks and "superficial" interaction with others). Plaintiff points to no objective evidence of record suggesting that different or greater limitations than those the ALJ assessed would be more appropriate for someone with Plaintiff's mental limitations. Substantial evidence supports the ALJ's decision.

## IV. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 30th day of December, 2021.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE